**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DONALD ROYCE,

    Plaintiff,

    v.

ERIE INSURANCE EXCHANGE,

    Defendant.

CIVIL ACTION NO. 3:15-cv-00058

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court is the Motion for Summary Judgment (Doc. 11) filed by Defendant Erie Insurance Exchange ("Erie"). The instant action arises out of an insurance claim submitted by Plaintiff Donald Royce ("Royce") to Defendant Erie for a burglary that occurred at Royce's home on August 4, 2014. Royce's home, located in Clarks Summit, Pennsylvania, was insured by Erie under a policy of Homeowners' Insurance. Royce asserts breach of contract and bad faith claims against Erie for, *inter alia*, Erie's purported failure to fairly evaluate Royce's claim and to promptly offer payment of the claim. Erie seeks summary judgment on the basis that the policy includes a "suit against us" provision, which precludes Royce from filing suit unless Royce has fully complied with the policy. Erie asserts that Royce has not fully complied, and is therefore precluded from filing suit. Because genuine issues of material fact exist as to whether Royce has fully complied with the policy, Erie's motion for summary judgment will be denied.

**I. Background**

**A.**     **Relevant Factual Background**

Royce owned a home located at 513 Grandview Street, Clarks Summit, Pennsylvania 18411. (Doc. 2, ¶ 2.) This home was covered by an insurance policy that Royce entered into with Erie (the "Policy"). (*Id.* ¶ 4; *see also* Doc. 11, Ex. B (letter from Erie's counsel to Royce's counsel attaching the Policy).) On August 4, 2014, Royce's home was burglarized.

(Doc. 2, ¶ 6.) Two days later, Royce reported the burglary to Erie and submitted a personal property inventory report form as requested by Erie as well as a list of personal property stolen and lost from the burglary. (*Id.* ¶¶ 8-9; Doc. 2, Ex. B.)

The relevant provisions of the Policy are as follows:

(15) SUIT AGAINST US

We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year (Maryland - three years) after the loss or damage occurs.

(16) WHAT TO DO WHEN A LOSS HAPPENS

In case of a loss, anyone we protect must:

1. give us or our Agent immediate notice of the loss. If the loss is due to criminal activity or theft, you must also notify the police;

. . .

3. furnish a complete inventory of damaged property including quantity, actual cash value and amount of loss claimed;

4. produce for examination, with permission to copy, all books of accounts, bills, invoices, receipts, other vouchers and other financial information as we may reasonably require;

5. show us or our representative the damaged property, as often as may be reasonably required;

6. at our request, separately submit to examinations and statements under oath and sign a transcript of the same;

7. cooperate with us in our investigation of a loss and any suits;

(Doc 11, Ex. B, at 14.)

On August 18, 2014, counsel for Erie wrote to Royce and his wife outlining their duties under the Policy and requesting that they (1) submit to an Examination Under Oath ("EUO") and (2) provide the documents and photographs specifically enumerated therein. (Doc. 11, Ex. C.) The next day, a representative of Erie performed an inspection of Royce's home. (Doc. 11, Ex. E.) On September 5, 2014, Royce's counsel e-mailed Erie's counsel stating that although his clients were willing to appear for an EUO, it may be necessary to schedule the EUO by video conference because Royce and his wife were now

2

residents of the State of Florida. (Doc. 11, Ex. F, at 1-2.) On September 17, 2014, Erie's counsel responded by explaining that Erie could not agree to an EUO by video conference because a video conference would make the use of exhibits extremely difficult, if not impossible. (*Id.* at 1.) This e-mail further noted that because the claim arises out of a Pennsylvania contract and claim of loss, the EUOs would properly be taken in Pennsylvania. (*Id.*) The e-mail also requested that Royce produce a copy of the documents previously requested by Erie in its August 18, 2014 letter to Royce. (*Id.*) Royce's counsel did not respond to this e-mail.

On October 30, 2014, Erie's counsel sent a letter to Royce's counsel inquiring as to whether Royce's EUO could be scheduled during the week of November 5, 2014, as Royce was then scheduled to appear in court in Lackawanna County, Pennsylvania for an unrelated matter. (Doc. 11, Ex. G.) Royce's counsel did not respond to this October 30, 2014 letter. On November 4, 2014, a follow-up letter was sent to Royce's counsel, setting forth the history of Erie's attempts to secure the EUOs of Royce and his wife pursuant to the Policy. (Doc. 11, Ex. H.) Again, Royce's counsel did not respond. On November 6, 2014, another letter was sent to Royce's counsel, again advising counsel of Royce's duty to cooperate with Erie in their investigation by submitting to an EUO and providing documents previously requested. (*Id.*) Again, Royce's counsel did not respond. On December 9, 2014, Erie's counsel e-mailed Royce's counsel again seeking the cooperation of Royce and his wife to submit to an EUO and provide the documents previously requested. (Doc. 11, Ex. J.) Royce maintains that a response to these letters was not necessary because they had "previously already made their position clear [that they would appear by video conference for the EUO] and any follow up letter was only repetitive and unnecessary given the Defendant's refusal to cooperate and act in good faith to investigate the loss given Plaintiff's physical condition." (Doc. 16, ¶ 14.)

On March 13, 2015, Royce's counsel e-mailed Erie's counsel a doctor's note restricting Royce's travel due to Royce's medical condition. (Doc. 18, Ex. A; *see also* Doc. 16, Ex. 3 (doctor's note restricting Royce from traveling long distance due to several severe

3

medical conditions).) Royce had been involved in a motor vehicle accident some time prior to the burglary, which caused him severe physical injury that prevented him from traveling. (Doc. 16, ¶ 6.) There was no mention of Royce's motor vehicle accident or medical condition restricting his travel in his counsel's previous request to Erie for an EUO by video conference. (*See* Doc. 11, Ex. F, at 1-2.) On April 1, 2015, Royce's counsel e-mailed Erie's counsel asking if Erie would consider a video conference deposition given the doctor's note regarding Royce's medical condition. (Doc. 18, Ex. A.) Erie attached this April 1, 2015 email to their reply brief in support of their motion for summary judgment. However, no response from Erie to this e-mail was attached. Rather, in their reply brief, Erie appears to question the legitimacy of this doctor's note and Royce's travel restrictions. (Doc. 18, at 3-4.) Specifically, Erie questions how Royce was able to travel from the Commonwealth of Pennsylvania to his current residence in Florida ***after*** the purported motor vehicle accident that caused his physical injuries. (*Id.*) Erie also questions how a Pennsylvania physician was able to issue an "Excuse Slip" noting Royce's physical condition and travel restrictions when Royce was living in Florida and therefore, had not been physically examined by the Pennsylvania physician. (*Id.*)

To date, there is no evidence in the record that Royce has submitted to an EUO.

**B.   Procedural History**

Royce commenced this action in the Court of Common Pleas of Lackawanna County, Pennsylvania on December 1, 2014. (Doc. 2.) On January 9, 2015, Erie removed the action to this Court. (Doc. 1.) On March 11, 2015, Erie filed the instant motion for summary judgment. (Doc. 11.) Erie argues that summary judgment should be granted in their favor because Royce failed to fully comply with the Policy, and is therefore precluded from filing suit under the Policy's "suit against us" provision. Royce filed a brief in opposition to the motion for summary judgment on April 6, 2015 (Doc. 17), and Erie filed a timely reply brief on April 17, 2015 (Doc. 18). The motion for summary judgment is now ripe for disposition.

## II. Discussion

**A.    Legal Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l*

*Wildlife Fed'n*, 497 U.S. 871 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

**B.    Premature Filing**

As a preliminary matter, this motion is ripe for disposition.  Royce argues that Erie's motion for summary judgment is premature because discovery has not yet commenced. (Doc. 17, at 2, 7.)  However, discovery need not commence before a motion for summary judgment may be filed.  *See* Fed. R. Civ. P. 56(b) (permitting a party to file a motion for summary judgment ***at any time*** until 30 days after the close of all discovery) (emphasis added); *see also Ania v. Allstate Ins. Co.*, 161 F. Supp. 2d 424, 426 (E.D. Pa. 2001) (ruling on a summary judgment motion even though discovery had not yet commenced because all of the legally relevant facts were undisputed).  In addition, Royce failed to file an affidavit or declaration demonstrating the reasons why a ruling on summary judgment is not yet appropriate.  *See* Fed. R. Civ. P. 56(d) (explaining that a court may allow time to obtain affidavits or declarations or to take discovery ***if a nonmovant shows by affidavit or declaration*** that, for specified reasons, it cannot present facts essential to justify its opposition).  Nor has Royce made any attempt to note these reasons or identify any information he would need discovery on in his opposition brief.  *See St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1313-14 (3d Cir. 1994) (explaining that if a Rule 56 affidavit is not filed, a nonmovant must still identify with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained).  Therefore, Royce has failed to show that Erie's motion for summary judgment is premature and this motion is properly before this Court.

**C.    "Suit Against Us" Provision**

Royce asserts breach of contract and bad faith claims against Erie on the basis that Erie purportedly failed to, *inter alia*, fairly evaluate Royce's claim and promptly offer payment of the claim.  Royce asserts that Erie acted in bad faith by failing to accommodate Royce's disability in scheduling an EUO by video conference.  Erie seeks summary

judgment on the basis that the Policy includes a "suit against us" provision, which precludes Royce from filing suit unless Royce has fully complied with all other provisions of the Policy. This provision reads as follows:

> (15) SUIT AGAINST US
>
> We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year (Maryland - three years) after the loss or damage occurs.

(Doc. 11, Ex. B, at 14.)  Erie asserts that Royce has not fully complied with the Policy, and is therefore precluded from filing suit.  Specifically, Erie asserts that Royce failed to comply with the Policy by failing to (1) submit to an EUO in Pennsylvania and (2) provide documentation relating to his claim that Erie had previously requested.

As a preliminary matter, there is no question that this "suit against us" provision is enforceable under Pennsylvania law. *See Baker v. Pa. Nat'l Mut. Cas. Ins. Co.*, 370 Pa. Super. 461, 463, 536 A.2d 1357, 1358 (Pa. 1987), *aff'd*, 559 A.2d 914 (1989) (noting that "the law is clear that such a clause . . . is valid and will be sustained") (quoting *Gen. State Auth. v. Planet Ins. Co.*, 464 Pa. 162, 165, 346 A.2d 265, 267 (Pa. 1975)).  Royce makes no argument to the contrary.  There is no dispute as to the enforceability of this provision and whether or not it would apply here to preclude Royce from filing suit, if this Court were to find that Royce did not fully comply with the Policy.

The evidence demonstrates that Royce has complied with the Policy as follows: Royce (1) reported the burglary and corresponding losses immediately after it occurred, (2) provided a list of items that were stolen in the burglary, (3) permitted Erie to perform an inspection of the home where the burglary occurred, and (4) agreed to submit to an EUO, though by video conference as opposed to appearing in person.  (Doc. 16, ¶ 5; *see also* Doc. 2, Ex. B (Royce's inventory list).)  However, at issue is whether Royce complied with the Policy's requirements to (1) provide **all** supporting documentation related to his claim as Erie may reasonably require and (2) submit to an EUO.  More specifically, at issue is whether Royce fully complied with three (3) provisions of the Policy:  Provisions 16(4), 16(6), and 16(7).  The Court will address each one of these provisions in turn.

7

First, Provision 16(4) of the Policy requires the insured to "produce for examination, with permission to copy, all books of accounts, bills, invoices, receipts, other vouchers and other financial information as we may reasonably require." (Doc. 11, Ex. B, at 14.) Erie asserts that Royce has failed to submit supporting documentation relating to his claim. (*See, e.g.*, Doc. 11, Ex. I, at 1; Doc. 12, at 4 n.1.) However, Royce asserts that he has already submitted supporting documentation relating to his claim. (*See* Doc. 16, ¶ 5.) It is unclear, both from the evidence in the record as well as Erie's own briefs in support of their motion for summary judgment, what other documentation it is that Erie requested that Royce has not already provided. Therefore, a genuine issue of material fact exists over whether Royce submitted all documentation that Erie requested relating to his claim, as required by Provision 16(4) of the Policy.

Second, Provision 16(6) of the Policy requires the insured to, "at [the insurer's] request, separately submit to examinations and statements under oath and sign a transcript of the same." (Doc. 11, Ex. B, at 14.) It is clear from the evidence that Royce agreed to submit to an EUO. In an e-mail dated September 5, 2014, Royce's counsel e-mailed Erie's counsel explicitly stating that he received Erie's request to schedule an EUO and that his clients were "willing to sit for that." (Doc. 11, Ex. F, at 1-2.) However, he noted that the EUO may need to be scheduled by video conference because Plaintiffs had already moved out of the state to Florida. (*Id.*) Erie responded, noting that they could not agree to an EUO by video conference because a video conference would make the use of exhibits extremely difficult, if not impossible. (*Id.* at 1.) Erie further noted that because the claim arises out of a Pennsylvania contract and claim of loss, the EUOs would properly be taken in Pennsylvania. (*Id.*) Royce and his counsel did not respond to this e-mail.

Approximately six (6) months later, Royce's counsel renewed his request to Erie's counsel for an EUO by video conference, only this time he indicated that a video conference would be required because of physical injuries Royce sustained in a motor vehicle accident that prevented him from traveling. (Doc. 18, Ex. A.) By this time, the instant action had already been filed. Erie appears to question the legitimacy of Royce's travel restrictions in

their reply brief in support of their motion for summary judgment, specifically questioning how Royce was able to travel from the Commonwealth of Pennsylvania to his current residence in Florida *after* the purported motor vehicle accident that caused his physical injuries, and also how a Pennsylvania physician was able to issue an "Excuse Slip" noting Royce's physical condition and travel restrictions when Royce was living in Florida and therefore, had not been physically examined by the Pennsylvania physician. (Doc. 18, at 3.) Regardless of whether or not Royce's medical condition restricts him from traveling to the Commonwealth of Pennsylvania to physically appear for an EUO, he agreed to submit to an EUO by video conference, and it is not clear from the terms of the Policy that this constitutes a failure to fully comply with Provision 16(6). The provision merely requires that the insured, "at [the insurer's] request, separately submit to examination and statements under oath," without any reference to where the examinations must take place. (Doc. 11, Ex. B.) Therefore, there is a genuine issue of material fact as to whether Royce's offer to submit to an EUO by video conference is in full compliance with Provision 16(6) of the Policy. *Cf. Brethren Mut. Ins. Co. v. Thomas*, No. 3:04-cv-1509, 2006 WL 2376248, at *8 (M.D. Pa. Aug. 14, 2006) (finding that it was a jury question of whether the insured's failure to submit to supplemental EUOs requested by the insurance company was a breach of the insurance policy).

Finally, Provision 16(7) of the Policy requires the insured to "cooperate with [the insurer] in [their] investigation of a loss and any suits." (Doc. 11, Ex. B, at 14.) It is a question of fact for the fact-finder as to whether or not Royce's offer to submit to an EUO by video conference satisfied this provision to "cooperate with" Erie in their investigation of his claim. A reasonable juror could find that an EUO by video conference was sufficient to constitute cooperation, particularly given Royce's medical condition. However, a reasonable juror could also find that Royce's refusal to appear in the Commonwealth of Pennsylvania for the EUO, as specifically requested by Erie, failed to satisfy this provision requiring cooperation. In addition, a reasonable juror could find that the repeated failure by Royce and his counsel to respond to Erie's letters and e-mails over a course of four (4) months

requesting an EUO and additional documentation also fails to satisfy this provision. Therefore, genuine issues of material fact remain as to whether or not Royce fully complied with the Policy such that he would be precluded from filing suit. Accordingly, Erie's motion for summary judgment will be denied.

### III. Conclusion

For the above stated reasons, Erie's motion for summary judgment will be denied.

An appropriate order follows.

| | |
|---|---|
| August 21, 2015<br>Date | /s/ A. Richard Caputo<br>A. Richard Caputo<br>United States District Judge |